IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 3:09cv767-RLW-DWD |
| ) | |
| **$17,891.89 IN FUNDS FROM UNION BANK** ) | |
| **& TRUST ACCOUNT NUMBER** ) | |
| **342934201; et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Claimants' motion to strike (Docket No. 48) and the Plaintiff's motion for summary judgment (Docket No. 37). For the reasons set forth herein, it is the Court's recommendation that the Claimants' motion to strike be GRANTED in part, and DENIED in part, and that the Plaintiff's motion for summary judgment be DENIED.[1]

### I. BACKGROUND

The Court has reviewed each party's statement of undisputed facts, including the extensive supporting documentation filed in support of the respective positions. Resolving all genuine disputes of material fact in favor of the Plaintiff, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), as required, and discounting those factual assertions that are

---

[1]Claimants also filed a motion to strike the Government's reply brief to the motion to strike the declaration. At oral argument, however, Claimants withdrew the motion, and the motion is therefore denied as moot.

immaterial or stricken by the Court, *infra*, the Court has concluded that the following narrative represents the undisputed material facts for purposes of resolving Plaintiff's motion for summary judgment.

The subject monetary amount totals $32,431.32 and was seized by the United States ("Plaintiff" or "Government") on or about June 21, 2009, from three accounts at Union Bank & Trust ("Union"), and one account at Eastern Virginia Bank ("Eastern") (collectively, "the Defendant Accounts"). On December 4, 2009, the Government filed a Complaint for Forfeiture *In Rem* as to the Defendant Accounts, alleging that the seized funds were involved in illegal structuring and, therefore, subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) (Docket No. 1).

The sum of $17,891.89 was seized from a Union account ending in -4201, held in the name "Shaq's Corporation." Shaq's Corporation, d/b/a BG Shell, is a Virginia corporation operating a gas station and convenience store. It claims ownership of the funds in all four of the accounts in question. (Docket No. 6). Shagufta Yasmeen is its president and sole shareholder. Ms. Yasmeen also claims ownership of the funds in all four accounts. (Docket No. 14). All of the funds at issue were derived from the operations of Shaq's Corporation.

The additional sum of $7,375.12 was seized from a Union account ending in -3106, held in the name of "Maria S. Shah." Maria Shah is the adult child of Abdul Shah and Shagufta Yasmeen. She is the only signatory on the account and claims ownership of the funds in the account. (Docket No. 15). Until November 2008, she regularly deposited her personal wages from her employment into the account, and it had a balance of $14,893.43 after her last payroll deposit. At no time after her last deposit was the total of the funds in -3106 less than $7,375.12.

(Affidavit of Maria Shah ¶¶ 9-10). Ms. Shah frequently permitted Abdul Shah, her father, to make deposits into her account, and she issued check drafts on the account when requested. (Claimant Marie Shah Opp'n Br. at 3.)

The sum of $5,919.56 was seized from Union account ending in -1306, held in the name of "A Q Shah." AQ Shah is the only signatory on the account. Abdul Q. Shah, Shagufta Yasmeen's Husband, was responsible for the day-to-day activities of the Shaq's Corporation from January 2008 to April 2009. During the relevant period, all bank deposits into all four of the bank accounts were either made by Abdul directly, or by someone else at his direction. (Dep. of Shagufta Yasmeen at 48-49.)

The sum of $1,244.72 was seized from an Eastern account ending in -5981, held in the name of "Kukki International, Inc. d/b/a Q Markets" ("Kukki"). The signor on the account is Abdul Q. Shah. Kukki is in dissolution and Abdul Shah serves as its trustee in dissolution. Kukki claims ownership of the funds in the account. (Docket No. 16).

Shaq's Corporation used its Union account ending -4201, as well as two other Union accounts, to organize their deposits into a general fund, an account for payment of gasoline, and an account for payments to the Virginia Lottery system. Shaq's Corporation used Eastern account ending in -5981 to make purchases at local wholesalers (Costco and Sam's Club). (Aff. of Shagufta Yasmeen at ¶¶ 13-15). It was essential to the operation of the business that sufficient funds were in the correct accounts when needed. (Id. at ¶ 16).

From June 9, 2008, to December 15, 2008, there were forty-three (43) instances[2], totaling $755,509.00, in which multiple cash deposits were made by Abdul Shah (or under his direction) into different accounts. In each of those instances, the aggregate of the deposits was in excess of ten thousand dollars ($10,000.00). Eighteen (18) of those instances involved accounts at two different financial institutions. (Pl. Br. at ¶ 8.) Bank records also reveal that on sixteen (16) occasions, Mr. Shah deposited currency into a personal bank account, wrote a check from the personal account to the business account, and then deposited currency and the personal check into the business account. (Id.) On three (3) occasions, Abdul deposited cash into Maria's account, and then directed her to write a check to "BG Shell" for the deposited amount. (Pl. Br. at ¶ 15.)

From January 15, 2009, to April 14, 2009, there were thirteen (13) instances, totaling $188,299.00, where multiple cash deposits were made on the same day, or consecutive days, into multiple accounts. In almost all of the instances, the cash deposits were made in amounts ending in zero. (Pl. Br. at ¶ 9.)

## II. MOTION TO STRIKE DECLARATION OF AGENT RAZETTI

Claimants have moved to strike the declaration of Special Agent Judith Razetti ("Agent Razetti"), the agent of the Internal Revenue Service who investigated the case for the Government, on two grounds. First, Claimants assert that it constitutes expert testimony for which no prior notice was provided as required by Fed. R. Civ. P. 26 and this Court's Scheduling

---

[2]Claimants object to the characterization of the deposits as a single transaction. The Court does not imply that any deposits made by, or on behalf of, any of the claimants, were made as part of a single transaction or, conversely, constituted multiple transactions. Such a characterization is subject to debate, but the act of making the deposits is an undisputed material fact.

Order. (Pl.'s Br. Opp'n Mot. Sum. J. at 1-2.) Second, Claimants argue that Agent Razetti's declaration contains hearsay statements of Abdul Shah that cannot be considered. (Id.)

Evidentiary issues are within the court's sound discretion, including those involving affidavit evidence submitted at the summary judgment stage. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993). However, a court must apply the applicable rules of evidence in exercising such discretion. Id.

**A.    Expert Testimony**

Fed. R. Civ. P. 26 provides that "a party must disclose to the other parties the identity of any witness it may use at trial under Federal Rules of Evidence 702, 703, 704." Fed. R. Civ. P. 26(a)(2)(A). Rule 26 also requires parties to make such disclosures in accordance with the Court's orders. Fed. R. Civ. P. 26(a)(2)(C). In this instance, the Court's Scheduling Order specifically provides:

> [D]isclosure of experts' identities, as required by Fed. R. Civ. P. 26(a)(2), shall be made pursuant to Federal Rule of Civil Procedure 26 and Local Civil Rule 26(D)(2) unless counsel enter into a formal agreement, pursuant to Local Civil Rule 26(D)(1), governing the use of experts. Failure to memorialize such an agreement will result in literal enforcement of Local Civil Rule 26(D)(2).

(Docket No. 18.)

The parties never agreed to extend the deadline for the disclosure of expert witnesses and, therefore, E.D. Va. Loc. R. 26(D)(2) controls. That Rule calls for disclosure of experts by the "plaintiff not later than sixty (60) days before the earlier of the date set for completion of discovery or for the final pretrial conference." Id. Here, the Court ordered that discovery be completed no later than September 1, 2010. Sixty days prior to that date was July 29, 2010, and

5

the Government did not disclose its intent to offer expert opinion testimony by that date. Although the trial has been postponed, such postponement did not occur until September 2, 2010 -- after the end of discovery and well after the final date for plaintiff's expert disclosure.[3]

At oral argument on the pending motions, the Government argued that Agent Razetti, as the IRS Agent assigned to the case, is not required to be qualified as an expert in order to offer her evidence. Indeed, a witness may give both fact and opinion testimony. United States v. Wilson, 484 F.3d 267, 273 (4th Cir. MD. 2007). As the Government's investigator, Agent Razetti may testify to the facts revealed in her investigation without qualifying as an expert. In addition, she may qualify as an expert to interpret those facts based on her knowledge, experience, and training as an IRS agent. However, her interpretation of such factual circumstances, based on her specialized knowledge and experience, constitutes opinion testimony within the ambit of Fed. R. Evid. 702. Thus, the plain language of Fed. R. Civ. P. 26 and the Court's own Scheduling Order mandates notice of the Government's intent to offer the subject opinion testimony, and the Government cites no authority relieving it of the obligation.

Such opinion testimony includes paragraph 2, which begins "[b]ased on my training and experience" and describes, generally, how individuals and businesses make their bank deposits. It continues to opine that those who are involved in structuring activity tend to make their bank deposits in a particular manner. In paragraph 3, for example, Agent Razetti describes the general characteristics of the crime of illegal structuring. Finally, in paragraph 4, she applies her knowledge of the crime of structuring to the facts in the present case and offers her opinion,

---

[3] As trial in this case has been continued generally, the court may consider a motion to re-open discovery, upon a sufficient showing of good cause.

based on both her "training and experience," and the subject facts, to conclude the Claimants were involved in the crime.[4] Thus, by offering an opinion based on specialized knowledge, paragraphs 2, 3, and 4 of Agent Razetti's declaration are within the scope of expert testimony governed by Fed. R. Evid. 702 and, therefore, constitute expert opinion testimony for which notice was required pursuant to Fed. R. Civ. P. 26 and the Court's own Scheduling Order.

Moreover, the Government's failure to disclose its intent to offer such expert testimony is prejudicial to the Claimants. They were not provided the opportunity to depose Agent Razetti concerning her opinion and the bases for same because, at the time of her deposition, Claimant's counsel was unaware that the Agent might be called upon to offer expert opinion testimony. Moreover, had the Claimants been given such notice, they could have retained their own expert to rebut Agent Razetti's opinion testimony. Accordingly, due to the Government's failure to disclose its intent to offer such opinion evidence by the appropriate date, and the prejudicial impact of such a failure on the Claimants, the Court recommends that the portions of Agent Razetti's declaration consisting of her opinion on any factual circumstance be stricken and otherwise disregarded. See, e.g., Jackson v. Consolidation Coal Co., 1994 U.S. App. LEXIS 5190 at *7 (4th Cir. Va. Mar. 22, 1994).

---

[4] At oral argument, the Government argued that law enforcement members need not be specially qualified in order to offer expert testimony. Whether or not Agent Razetti ultimately qualifies to offer her opinion pursuant to the Federal Rules of *Evidence* is a separate issue from whether the Government was required to provide the Claimants with notice of its intent to do so, as required by the Federal Rules of *Civil Procedure* and the Court's own Scheduling Order. It is the Government's intent to offer expert opinion testimony that triggers the notice requirement, regardless of whether the subject witness qualifies to offer the opinion.

7

For these reasons, the Court will not consider those portions of Agent Razetti's declaration that constitute opinion testimony (paragraphs 2, 3, and 4) in resolving the motion for summary judgment.

**B.     Hearsay Statements**

Claimants also argue that paragraphs 6 and 7 of Agent Razetti's declaration constitute inadmissible hearsay and should, therefore, not be considered by the Court in resolving the defense motion for dispositive relief. The Government responds that Abdul Shah's statements to Agent Razetti are within the hearsay exception for "statements against interest" as defined in Fed. R. Evid. 804(b)(3). Pursuant to the Rule, there are three criteria for the exception to apply: (1) the declarant must be unavailable; (2) from the perspective of the average, reasonable person, the statement must be truly adverse to the declarant's penal or proprietary interest; and (3) corroborating circumstances must clearly establish the trustworthiness of the statement. United States v. MacDonald, 688 F.2d 224, 232-233 (4th Cir. 1982), cert. denied, 459 U.S. 1103, 103 S. Ct. 726, 74 L. Ed. 2d 951 (1983); United States v. Carvalho, 742 F.2d 146, 149-150 (4th Cir. Va. 1984). Here, there is no dispute but that Mr. Shah is unavailable and beyond any reasonable means to produce him because he has been out of the United States in Pakistan since November of 2009. Thus, only the second and third elements are implicated.

Mr. Shah stated that he was aware of the bank's requirement to prepare a form for cash deposits over $10,000. He also stated that his business practice was to "break up" his cash deposits, and that he would divide such deposits between various accounts. Such statements are clearly against Mr. Shah's penal and/or pecuniary interests in that they implicate him in the crime

8

of illegal structuring by providing evidence of at least two of the elements required to constitute a violation of the structuring statutes.

Corroborating circumstances also exist to establish the trustworthiness of the admissions. Specifically, Shagufta Yasmeen's separate affidavit sets forth that Mr. Shah would divide cash deposits between various accounts. Furthermore, Maria Shah's affidavit states that Mr. Shah used her account to make such cash deposits. There are also bank records which demonstrate that Mr. Shah would "break up" those deposits. Because the hearsay statements in Agent Razetti's declaration satisfy the qualifications for a Rule 804(b)(3) exception, the Court will consider them for purposes of resolving the Government's motion for summary judgment.

In addition, Mr. Shah's statements can be considered as non-hearsay pursuant to Fed. R. Evid. 801(d)(2), as the admission of a party opponent. Such a statement qualifies as non-hearsay if offered against a party, and it is the party's own statement in either an individual or *representative* capacity. Here, Mr. Shah's statements are offered against all of the Claimants, including the business, Kukki, and Abdul Shah currently serves as the trustee in dissolution of the company, thus making him an agent or representative of the corporation.

Therefore, the Court recommends that the Claimant's motion to strike be GRANTED, in part, and DENIED in part, whereby in resolving the motion for summary judgment, the Court should not consider the opinion testimony contained in Agent Razetti's declaration, but can consider the statements attributed to Mr. Shah alleged therein.

# III. MOTION FOR SUMMARY JUDGMENT

## A. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. Id. at 255.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. Anderson at 247-48 (emphasis in original). Indeed, summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the

appearance of some "metaphysical doubt" concerning a material fact. Lewis v. City of Va. Beach Sheriff's Office, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

Furthermore, a "material fact" is a fact that might affect the outcome of a party's case. Anderson, 477 U.S. at 247-48; JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable jury to return a verdict in that party's favor. Anderson, 477 U.S. at 248.

**B.     Discussion**

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the Government bears the initial burden of establishing, by a preponderance of the evidence, that the defendant account is forfeitable. 18 U.S.C. § 983(c)(1); United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002). Under the "preponderance of the evidence" standard, the government must show that the relevant facts are more likely true than not." United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004). Accordingly, the Government must prove by a preponderance of the evidence that the defendant accounts at issue here are "traceable" to the crime of structuring. 31 U.S.C. § 5324(a).

11

Federal law requires financial institutions to file reports with the Treasury Department for any cash transaction exceeding ten thousand dollars ($10,000.00). 31 U.S.C. § 5313; 31 C.F.R. § 103.22(a) (1995). Federal law also makes it illegal to structure a transaction for the purpose of evading the financial institution's reporting requirement. 31 U.S.C. § 5324. An individual structures such a transaction when several related cash deposits are made in amounts less than $10,000.00, rather than making one single cash deposit in an amount exceeding the threshold amount. See United States v. McMahon, 1998 U.S. App. LEXIS 11821 at *13 n.5 (4th Cir. June 8, 1998) (explaining the United States Department of the Treasury's definition of structuring).

In order for the Government to prove that the funds were structured, the Government must demonstrate: (1) that the person has knowingly structured, attempted to structure, or assisted in structuring a currency transaction; (2) that the person knew of the domestic financial institution's legal obligation to report transactions in the excess of $10,000.00; and (3) that the purpose of the structured transaction was to evade the reporting obligation. United States v. MacPherson, 424 F.3d 183, 189 (2nd. Cir. 2005). The Government need only prove that the person actually structured the funds with knowledge of the reporting requirements and with the specific intent to avoid the reporting requirements. United States v. Wollman, 945 F.2d 79, 81 (4th Cir. 1991). It does not need to prove that the person structuring a transaction knew that structuring, as such, is illegal. Id.

Here, there is no dispute but that Mr. Shah was aware of a bank's legal obligation to report transactions involving the making of a deposit exceeding ten thousand dollars

($10,000.00).[5]  (Claimants' Opp. Br. at 9, Dec. of Agent Razetti ¶ 6.)  Thus, the Court need only address the first and third elements of the Government's claim.

1.      **Structure of the Deposits**

The bank records from Union and Eastern reveal that from June 9, 2008, to December 15, 2008, there were forty-three (43) instances, totaling $755,509.00, in which Abdul Shah made multiple cash deposits into different accounts, or directed others to do so.  In each of those instances, the aggregate of the deposits was in excess of $10,000.00.  Eighteen (18) of those instances involved the use of accounts at two (2) different financial institutions.  The bank records also conclusively demonstrate that on sixteen (16) occasions, Shah deposited currency into a personal bank account, issued a check from the personal account to the business account, and then deposited currency and the personal check into the business account.  In each of the instances, if Abdul had deposited all of the currency directly into the business account, the bank would have been required to file a currency transaction report ("CTR") on the business account for the currency deposit.  In addition, on three (3) occasions, Abdul deposited cash into Maria Shah's account, and then directed her to issue a check to "BG Shell" for the deposited amount.

Bank records further establish that from January 15, 2009, to April 14, 2009, there were thirteen (13) instances, totaling $188,299.00, in which multiple cash deposits were made into multiple accounts on the same day or on consecutive days.  In almost all of the instances, the cash deposits are for even amounts, ending in zero.  Deposits made in such a manner constitute relevant evidence that Abdul Shah knowingly structured the deposits, there being no evidence in

---

[5] At oral argument, for the first time, Claimants disputed Mr. Shah's knowledge of the reporting requirement.  However, they admitted as much in their motion papers, and the evidentiary record, including Mr. Shah's statements against his penal and/or pecuniary interests confirms that his knowledge of the requirement is not genuinely in dispute.

the present record to the contrary. See United States v. 79,650.00 Seized from Bank of Am. Account Ending in 8247 at Bank of Am., 2010 U.S. Dist. LEXIS 30608 at *8-9 (E.D. Va. Mar. 29, 2010). Accordingly, the undisputed evidence supports the conclusion that the Government has satisfied the first element of the analysis.

### 2. Purpose of Structuring the Transaction

The third necessary element involves the purpose for structuring the subject transaction in the manner described. The Government relies on the holding in MacPherson to argue that the "intent to evade" element can be inferred from the pattern of structuring.[6] (Pl. Br. at 20-21.) MacPherson does indeed hold that the *mes rea* elements of structuring can be inferred. However, as one court has recently noted, MacPherson is not a case involving summary judgment, but a case involving the appeal of a district judge's decision setting aside a guilty jury verdict. 79,650.00, U.S. Dist. LEXIS 30608 at *15 (citing MacPherson, 424 F.3d at 191). In MacPherson, the Court reversed the judgment of acquittal and remanded the case to the district court because, "MacPherson's willingness to sacrifice efficiency and convenience in depositing a quarter-million dollars through multiple small transactions structured to ensure that no one transaction exceeded $10,000.00 amply supported a *reasonable inference* that MacPherson knew of and was intent on avoiding CTR reporting requirements." Id. (emphasis added).

As the Court in MacPherson ruled, a factfinder presented with only circumstantial evidence of intent could reasonably infer that the purpose of structuring a transaction was to intentionally evade reporting requirement, based on the "totality of the circumstances." Id. at

---

[6]The Government also relies on the undisputed opinion testimony of Agent Razetti, discussed *supra*, in order to satisfy the element. However, such evidence is not considered for purposes of resolving the Government's motion for summary judgment for the reasons stated herein.

184. In the instant case, however, the Government asks the Court, not a trial factfinder, to draw such an inference in its favor as a matter of law. Drawing such an inference at the summary judgment stage is not appropriate. See Anderson, 477 U.S. at 255.

"[T]he general rule [is] that summary judgment is seldom appropriate in cases wherein particular states of mind are decisive elements of a claim or defense." Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). This is so because "a party's mental state is inherently a question of fact which turns on credibility." United States v. Dollar Bank Money Market Account No. 1591768456, 980 F.2d 233, 240 (3d Cir. Pa. 1992). Here, the affidavit of Shaqufta Yasmeen provides an alternative explanation for the structured deposits, namely, that Shaq's Corporation utilized different accounts for different purposes; and that the deposits were made to ensure that each account had sufficient funds to meet any outgoing expenditures for those different purposes. (Affidavit of Shagufta Yasmeen ¶ 16.) The Court offers no opinion as to the veracity of such an explanation, but simply recognizes that the possible validity of such an explanation creates a genuine issue of material fact that precludes the granting of dispositive relief. Dollar Bank, 980 F.2d at 240.

During oral argument, the Government emphasized that Ms. Yasmeen's affidavit was inconsistent with her previous deposition, and that because of the inconsistencies, the Court should not consider her affidavit evidence. The Government emphasizes that in her deposition, Ms. Yasmeen testified that she, in fact, had no personal knowledge of the salient facts, as the handling of the bank deposits were her husband's responsibility. However, now Ms. Yasmeen offers in her affidavit the subject explanation necessarily premised on personal knowledge of the same transactions. Nevertheless, the two positions may be read as consistent with one another.

In her deposition, Ms. Yasmeen states that she believed that her husband made the various deposits in a certain manner because "he knows how much the lottery people take, how much the gas people [take]." (Govt's Rep. Br. at 3.) Such is essentially the same explanation Ms. Yasmeen offers in her affidavit. (Cl. Br. Opp'n at Ex. 2. pp. 2-4.) Unlike the deposition testimony, the affidavit states that Ms. Yasmeen has now reviewed the business records of Shaq's Corporation, the bank statements concerning the deposits at issue, and the bank statements of Mr. Shah, Maria Shah, and Kukki. (Cl. Br. Opp'n at Ex. 2. p. 1.) Such a review, combined with her knowledge of Mr. Shah's reasoning for making such separate deposits, supports a possible conclusion that she subsequently gained personal knowledge for the explanation offered in her affidavit.

"[T]he government cannot prevail on summary judgment if the claimant offers a reasonable and legitimate explanation for the organizing of transactions in amounts under $10,000.00, and the explanation is verified by facts and circumstances which, *if believed*, would enable a rational jury to conclude by a preponderance of the evidence that the transactions were not structured for the purpose of evading the reporting requirements." Dollar Bank at 241 (emphasis added). Determining whether Ms. Shah's explanation is to be believed requires the Court to weigh the evidence and make a credibility determination, which, therefore, precludes the granting of the requested relief. See Williams, 372 F.3d at 667.

Therefore, the Court concludes that summary judgment is not appropriate and recommends that the Government's motion for summary judgment be DENIED.

### IV. CONCLUSION

In conclusion, and for the reasons discussed herein, it is the recommendation of this Court that the Claimant's motion to strike be GRANTED, in part, and DENIED, in part, and that

16

the Plaintiff's motion for summary judgment be DENIED.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Richard L. Williams, with notification to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                  /s/
                                        Dennis W. Dohnal
                                        United States Magistrate Judge

Richmond, Virginia
Dated: December 8, 2010