IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

    Plaintiff,

v.        Civil Action No. 3:09CV767-JAG

$17,891.89 IN FUNDS FROM UNION BANK
& TRUST ACCOUNT NUMBER
342934201; et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court to consider Plaintiff's objections to the Report and Recommendation ("R&R") entered by the Honorable Dennis W. Dohnal, United States Magistrate Judge ("Magistrate Judge"), on December 8, 2010, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge recommended Claimants' Motion to Strike be granted in part and denied in part and that Plaintiff's Motion for Summary Judgment (Dk. No. 37) be denied. Plaintiff filed timely objections to the R&R on December 22, 2010, and Claimants replied on December 28, 2010, opposing those objections as well as Plaintiff's alternative motion to reopen discovery. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court, and argument would not aid in the decisional process.

Having considered the R&R, the entire record, and the objections and arguments of counsel, the objections to the R&R will be overruled, and the R&R will be accepted and adopted.

Accordingly, Claimants' Motion to Strike will be granted in part and denied in part; the Plaintiff's Motion for Summary Judgment will be denied.

## I.

As a preliminary matter, the United States ("Plaintiff" or "Government") has made six objections to the Magistrate Judge's proposed findings of undisputed facts. The Government objects to:

(1) The statement, "All of the funds at issue were derived from the operation of Shaq's Corporation." (R&R 2.)
(2) A description of the manner in which the bank accounts at issue were used for various purchases related to the business of Shaq's Corporation.[1]
(3) The statement, "Until November 2008, she [referring to Maria Shah] regularly deposited her personal wages from her employment into the account, and it had a balance of $14,893.43 after her last payroll deposit. At no time after her last deposit was the total of the funds in -3106 less than $7,375.12. (R&R 2.)
(4) The omission of three facts.[2]
(5) The characterization of banking activity from June 9, 2008 to December 15, 2008.
(6) The characterization of banking activity from January 15, 2009 to April 14, 2009.

With respect to objections (1) and (3), the Court agrees that the inclusion of these statements in the R&R's undisputed background of the case lacked the necessary factual underpinning.[3] With respect to objections (4), (5), and (6), the Court agrees that these facts are

---

[1] Specifically, the section stated:

> Shaq's Corporation used its Union account ending -4201, as well as two other Union accounts, to organize their deposits into a general fund, an account for payment of gasoline, and an account for payments to the Virginia Lottery system. Shaq's Corporation used Eastern account ending in -5981 to make purchases at local wholesalers (Costco and Sam's Club). (Shagufta Yasmeen Aff. ¶¶ 13-15). It was essential to the operation of the business that sufficient funds were in the correct accounts when needed. (Id. ¶ 16).

(R&R 3.)

[2] The three facts are:
  (1) The bank accounts at UBT for Shaq's Corporation were set up by Abdul Shah. (Shagufta Yasmeen Dep. 30-31, 37-38.)
  (2) Abdul Shah kept track of the receipts and prepared the deposit slips. With respect to all the deposit activity, Abdul Shah decided how much to deposit and into which accounts. (Yasmeen Dep. 48-52.)
  (3) Abdul Shah was aware that financial institutions are required to file a report for cash deposits in excess of $10,000.00 which is sent to the federal government. (Decl. of Agent Judith Razzetti ¶ 6.)

[3] The Court notes, however, that the Magistrate Judge likely included these facts in the R&R to provide the necessary background and maintain a logical flow of events. Their denotation as "disputed" or "undisputed" is irrelevant considering the Court must resolve all genuine issues of material fact in favor of the non-movant.

2

material and provide detailed background to the case at hand. Thus, in reaching the decision herein, the Court has excluded statements (1) and (3) from its consideration and included statements (4), (5), and (6) in its understanding. Nevertheless, the Court finds that none of these factual additions or subtractions has altered the ultimate analysis and decision of the Court at this stage of the litigation. On the other hand, objection (2) must be overruled because it seeks to exclude a material statement that has a substantial factual basis in the firsthand knowledge of Shagufta Yasmeen. Because the Court's analysis of objection (2) is closely tied to its analysis of the Government's summary judgment objection, however, it will be more thoroughly addressed in section III.2.

Next, for clarity purposes, the Court will provide an abbreviated summary of the case before addressing the Government's other objections.

The subject monetary amount totals $32,431.32 and was seized by the United States on or about June 21, 2009, from three accounts at Union Bank & Trust ("Union"), and one account at Eastern Virginia Bank ("Eastern") (collectively, "the Defendant Accounts").[4] On December 4, 2009, the Government filed a Complaint for Forfeiture *In Rem* as to the Defendant Accounts, alleging that the seized funds were involved in illegal structuring and subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2).

---

[4] The four seized amounts are as follows:

(1) The sum of $17,891.89 was seized from a Union account ending in -4201, held in the name "Shaq's Corporation." Shaq's Corporation, d/b/a BG Shell, is a Virginia corporation operating a gas station and convenience store.
(2) The sum of $7,375.12 was seized from a Union account ending in -3106, held in the name of "Maria S. Shah." Maria Shah is the adult child of Abdul Shah and Shagufta Yasmeen.
(3) The sum of $5,919.56 was seized from Union account ending in -1306, held in the name of "A Q Shah."
(4) The sum of $1,244.72 was seized from an Eastern account ending in -5981, held in the name of "Kukki International, Inc. d/b/a Q Markets."

The Complaint separated its description of the illegal banking activity into two time periods. From June 9, 2008, to December 15, 2008, Abdul Shah (or another family member under his direction such as his wife, Shagufta Yasmeen, or his daughter, Maria Shah) made multiple cash deposits into different accounts on forty-three (43) instances, totaling $755,509.00. (Compl. ¶ 13.) In each instance, the aggregate of the deposits was in excess of $10,000. (*Id.*) Eighteen (18) of those instances involved accounts at two different financial institutions. (*Id.*) On sixteen (16) occasions, Mr. Shah deposited currency into a personal bank account, wrote a check from the personal account to the business account, and then deposited currency and the personal check into the business account. (*Id.*) On three (3) occasions, Mr. Shah deposited cash into Maria's account, and then directed her to write a check to "BG Shell" for the deposited amount. (Pl.'s Br. ¶ 15.) Then, from January 15, 2009, to April 14, 2009, there were thirteen (13) instances, totaling $188,299.00, where multiple cash deposits were made on the same day, or consecutive days, into multiple accounts. (Compl. ¶ 15.) In almost every instance, the cash deposits were made in amounts ending in zero. (Pl.'s Br. ¶ 9.)

According to the Claimants, Shaq's Corporation used its Union account ending -4201, as well as two other Union accounts, to organize their deposits into a general fund, an account for payment of gasoline, and an account for payments to the Virginia Lottery system. (Yasmeen Aff. ¶¶ 11-12.) Shaq's Corporation used Eastern account ending in -5981 to make purchases at local wholesalers like Costco and Sam's Club. (Yasmeen Aff. ¶¶ 13-15.) The Claimants argue that it was essential to the operation of the business that sufficient funds were in the correct accounts when needed, thereby necessitating the perpetual management of account balances. (*Id.* ¶ 16.)

## II.

When a party files objections to a magistrate judge's report and recommendation, the court considers *de novo* those portions of the R&R to which an objection has been made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). A reviewing court may accept, reject, or modify, in whole or part, the magistrate judge's recommended disposition. *Id.*

### III.

The Government makes two additional objections to the Magistrate Judge's R&R: (1) to the recommendation to strike the expert testimony of Special Agent Judith Razzetti; and (2) to the recommendation to deny the Government's summary judgment motion. As required, this Court resolves all genuine disputes of material fact in favor of the non-moving party and disregards those factual assertions that are immaterial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

#### 1.

The Government objects to the Magistrate Judge's recommendation to grant the Claimants' Motion to Strike the Testimony of Special Agent Judith Razzetti as outlined in paragraphs two through four of her declaration. A witness certainly may provide both fact and opinion testimony. *United States v. Wilson*, 484 F.3d 267, 273 (4th Cir. Md. 2007). The Government believes that, under Fed. R. Evid. 701, Razzetti may testify as a lay witness concerning her investigation of the Defendant Accounts, her questioning of Mr. Shah, and her opinions concerning the evidence of structuring in the accounts. With respect to a portion of her testimony, however, the Magistrate Judge found:

> [H]er [Agent Razzetti's] interpretation of such factual circumstances, based on her specialized knowledge and experience, constitutes opinion testimony within the ambit of Fed. R. Evid. 702. Thus, the plain language of Fed. R. Civ. P. 26 and the Court's own Scheduling Order mandates notice of the Government's intent to offer the subject opinion testimony, and the Government cites no authority relieving it of the obligation.

5

(R&R 6.)

Pursuant to Fed. R. Civ. P. 26, "a party must disclose to the other parties the identity of any witness it may use at trial under Federal Rules of Evidence 702, 703, 704." Fed. R. Civ. P. 26(a)(2)(A). According to the Scheduling Order in this case, disclosure of experts was required no later than sixty (60) days before the end of discovery. Discovery was completed on September 1, 2010; thus, the Government should have disclosed any trial expert by July 3, 2010. No disclosure was made by that date. The Government would have this Court treat Agent Razzetti's opinion testimony as that of a lay witness for which prior notice is not required under the Federal Rules of Evidence, the Local Rules, and the Scheduling Order. The Court declines to do so.

A close analysis of paragraphs 2-4 of Agent Razzetti's declaration reveal that her intended testimony concerning the inference of structuring is clearly based on her expert training and experience. Paragraph 2 even begins "[b]ased on my training and experience" and continues with a description of how specialists like herself can identify certain banking trends and deposit schemes as red flags of structuring. (Razzetti Decl. ¶ 2.) In paragraph 3, Razzetti provides a summary of banking activities and deposit schemes that suggest illegal structuring. (Razzetti Decl. ¶ 3.) Finally, in paragraph 4, Razzetti describes her review of the Defendant Accounts and ultimately infers illegal structuring with the conclusion: "Based on my training and experience and the presence of factors listed in paragraph three, it appears that the account holders devised a scheme to break down the deposit into lesser amounts and use multiple deposits in a deliberate effort to avoid the filing of a CTR." (Razzetti Decl. ¶ 4.)

As an expert in detecting and analyzing the signs of illegal structuring, Agent Razzetti was required to have been noticed as such by July 3, 2010, and the failure to do so caused

prejudice to the Claimants. The Claimants were not given the opportunity to depose Razzetti with the understanding that she would be offering expert opinion testimony, and they were not given the opportunity to hire an expert who could refute such testimony. Therefore, paragraphs 2-4 of Agent Razzetti's declaration are hereby stricken and otherwise disregarded. The Government's objection is overruled.

2.

Second, the Government objects to the Magistrate Judge's conclusion that its summary judgment motion should be denied.

A motion for summary judgment is proper when "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted). In making its decision, a court must look to the affidavits or other specific facts pled to determine whether a triable issue exists. *Anderson*, 477 U.S. at 247-49. "[I]f the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c), it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). Summary judgment should not be granted, however, if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also*

*Taylor v. Deutsche Bank Nat'l Trust Co.*, 2010 U.S. Dist. LEXIS 110499 (E.D. Va. Oct. 18, 2010).

Under federal law, financial institutions must file reports with the Treasury Department for any cash transaction exceeding $10,000. 31 U.S.C. § 5313; 31 C.F.R. § 103.22(a) (1995). It is illegal to structure a transaction in order to evade the federal reporting requirement; thus, individuals who, rather than making one single deposit over $10,000, make several related cash deposits in amounts less than $10,000 are guilty of illegal structuring. 31 U.S.C. § 5324; *see United States v. McMahon*, 1998 U.S. App. LEXIS 11821 at *13 n.5 (4th Cir. June 8, 1998). To prove illegal structuring, the Government must establish that the property involved is subject to forfeiture by a preponderance of the evidence. *See* 18 U.S.C. § 983(c)(1).

More specifically, the Government must prove three elements in a civil forfeiture action: (1) that a person has knowingly structured, attempted to structure, or assisted in structuring a currency transaction; (2) that the person knew of the domestic financial institution's legal obligation to report transactions in the excess of $10,000; and (3) that the purpose of the structure transaction was to evade the reporting obligation. *See United States v. MacPherson*, 424 F.3d 183, 189 (2nd Cir. 2005). As determined by the Magistrate Judge and noted by the Government in its objections to the R&R, elements (1) and (2) of the test have been met in this case. Abdul Shah admitted to Agent Razzetti that he used to "break up deposits" and knew of the federal reporting requirement for deposits over $10,000. (Razzetti Decl. ¶ 6.) A pamphlet for use by Money Service Businesses that described structuring activity was even discovered in Mr. Shah's home. (*Id.* ¶ 5.) Thus, the Government has satisfied elements (1) and (2) of illegal structuring.

With respect to element (3), the Government argues, under *MacPherson*, that the intent to evade the reporting requirement can be inferred from a pattern of structuring. *See Macpherson*, 424 F.3d at 189. According to the Magistrate Judge's R&R, a genuine dispute existed as to element (3) because of Shagufta Yasmeen's deposition and affidavit testimony that described the need to make several smaller deposits to ensure each account had the necessary funds for its established use. The Government claims Yasmeen's testimony is both unreliably inconsistent and inadmissible as hearsay because it is based on secondhand knowledge from her husband. The Court disagrees.

Contrary to the Government's contentions, Yasmeen's deposition and affidavit are substantially similar and may be read in concert. In the relevant portion of her deposition, Yasmeen states:

> We make a deposit for like gas, and once a week they take the money from there, the gas people. Then it's lotto and every week they took the money from there. Other things. Money order. Then one is in a main account so we have a shopping for the store and stuff.

(Yasmeen Dep. 30.)

After completing a more thorough review of the banking records, Yasmeen stated in her affidavit that "Shaq's Corporation maintained at least three checking accounts . . . a general operating account . . . an account for making payments to the landlord/gasoline supplier . . . and an account for making payments to the Virginia lottery." (Yasmeen Aff. ¶ 11.) She continued: "It was essential to the operation of the business that sufficient funds were in the right accounts at the right time to ensure that sweeps and withdrawals were met, and to pay checks as they came due." (Yasmeen Aff. ¶ 16.)

According to the Government, because Yasmeen admits that her husband handled most of the deposits and controlled many of the financial aspects of the business, this Court should

dismiss her knowledge of the business's management and structure as inadmissible hearsay. While Yasmeen recognized that her husband was the primary manager of the finances, at no point does she state that her knowledge of the reasoning behind the creation and management of these accounts *only* derived from independent statements of her husband. The Government has provided insufficient evidence to show that Yasmeen, as President of Shaq's Corporation, could only provide an explanation for the history of deposits based on statements she heard from Mr. Shah. In actuality, Yasmeen provided a satisfactory explanation of the financial management of the business in both her deposition and affidavit.

In sum, the Claimants have put forth a genuine explanation for the structuring of their deposits such that a reasonable jury could return a verdict in their favor. This Court declines to resolve a material fact in the Government's favor on its own motion for summary judgment. As a result, the Court finds that the Government has failed to carry its burden with respect to element (3). The Government's objection is overruled, and the motion for summary judgment is hereby denied.

## **IV.**

Having considered *de novo* the portions of the R&R to which Plaintiff has objected, the Court finds that the Magistrate Judge's findings of fact and conclusions of law were without error. The objections to the R&R will be overruled, and the R&R will be accepted and adopted. Accordingly, the Plaintiff's Motion for Summary Judgment will be denied; the Claimants' Motion to Strike will be granted in part and denied in part.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: <u>May 17, 2011</u>
Richmond, VA

/s/ *[signature]*
John A. Gibney, Jr.
United States District Judge